**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**LESLIE BAKER,**

      **Plaintiff,**      **CIVIL ACTION NO. 13-cv-12058**

  vs.

                      **DISTRICT JUDGE LAURIE J. MICHELSON**

**COMMISSIONER OF**      **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Leslie Baker seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 18). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.   RECOMMENDATION:**

The undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 15) be GRANTED IN PART AND DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 18) be DENIED. This matter should be remanded pursuant to 42 U.S.C. § 405(g) for consideration of Plaintiff's obesity as discussed herein.

## II.     PROCEDURAL HISTORY:

Plaintiff filed an application for Supplemental Security Income Benefits and an application for Disability Insurance Benefits with protective filing dates of December 6, 2010, alleging that she had been disabled since October 23, 2010,[1] due to back pain, carpal tunnel syndrome, heart disease, and anxiety. (*See* TR 23, 25.) The Social Security Administration denied benefits. (*See* TR 23.) Plaintiff requested a de novo hearing, which was held on November 7, 2011, before Administrative Law Judge (ALJ) Kyle Andeer, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 23-32.) The Appeals Council declined to review the ALJ's decision, and Plaintiff filed her Complaint in the instant matter. (Docket no. 1.) The parties then filed their Motions for Summary Judgment.

## III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.     Plaintiff's Testimony

Plaintiff was 30 years old at the time of the administrative hearing and at the time of her alleged onset. (*See* TR 57.) She had worked as a nurse's aide in the home-healthcare field until September of 2010, at which time she stopped working due to back pain that occurred after she re-injured her back when she passed out and fell; Plaintiff's initial back injury occurred when she fell while working in November of 2009. (*See* TR 56, 46.) At the time of the hearing, Plaintiff lived with her 11-year-old son. (TR 48.) She indicated that her sister lived just down the road and often came over to help her with household chores. (TR 48.)

---

[1] Plaintiff initially alleged disability beginning on September 30, 2010, but she amended her alleged onset date at the time of her hearing. (*See* TR 23.)

Plaintiff testified that her physical ailments consisted of heart palpitations, headaches, back pain, leg pain, and carpal tunnel syndrome in both of her hands. (TR 44-45, 52) She told the ALJ that the pain from her back goes down into her legs and that she can neither sit nor stand without pain; she spends most of her time lying down with two pillows under her. (TR 45.) She indicated that she can only walk a short distance because of her pain and because she becomes short of breath due to her heart condition and recently diagnosed Asthma. (TR 45-46.) She told the ALJ that she could only sit for 15 or 20 minutes before she would have to lie down and that she had difficulty lifting a gallon of milk. (TR 52-53.) She also noted that although she wears braces on both of her wrists, her carpal tunnel causes her fingers and arms to go numb all the time, and she frequently drops things. (TR 52.)

Plaintiff testified that she receives injections for her back, which help somewhat, but she also takes Vicodin each evening before bed. (TR 46-47.) And she takes medication for her heart condition twice a day. (TR 47, 53.) She added, though, that her heart medication causes headaches that "feel like [she has] barbed wire around [her] head and it's just poking [her] in [her] scalp." (TR 47.) Plaintiff testified that these headaches occur almost daily and that she has to lie down with a cold towel on her face to relieve the pressure. (TR 47.) She also testified that her medication slows her heart rate and makes her dizzy, which causes her to lie down for two or three hours each day. (TR 53.) She also has frequent heart palpitations and dizzy spells, which sometimes cause her to fall over. (TR 49, 54.) Plaintiff stated that her doctors told her to diet, reduce her caffeine intake, and "basically take it easy;" she was also supposed to undergo cardiac ablation, but she cancelled a January 2010 ablation appointment. (TR 54, 50.) She also indicated that she was supposed to wear a Holter monitor for 24 hours, but she only wore it for one day when her doctors called and told her to go to the emergency room. (TR 49.)

With regard to her mental limitations, Plaintiff testified that she has frequent panic attacks associated with anxiety. (TR 50-51.) She stated that she had severe anxiety about death and that she cancelled her ablation appointment because she "thought she was going to die." (TR 50.) She also testified, though, that she had been meeting with a therapist and that she had been prescribed Ativan to deal with her anxiety, which she indicated was "helping [her] to relax." (TR 50.) Plaintiff then stated that she has panic attacks three or four times a month, which she characterized as including heavy breathing and a lump in her throat. (TR 50-51.)

With regard to daily activities, Plaintiff testified that she generally lies down around the house. (TR 48.) She also noted that while she does help her son get ready for school, her sister comes over to help cook and take care of her house. (TR 48.) Additionally, her son sometimes helps out. (TR 48.)

### B.     Medical Record

Defendant asserts that "[t]he ALJ adequately presented . . . medical evidence in this case." (Docket no. 18 at 6.) Plaintiff sets forth a summary of her medical record that is substantially similar to that set forth by the ALJ. (*Compare* docket no. 15 at 6-9, *with* TR 28-30.) For purposes of context, the undersigned will include Plaintiff's account of her medical record, with some noted modifications, as follows:

> . . . Plaintiff's medical records show that she primarily suffers from degeneration of her lumbar spine, cardiac-related problems, and chronic pain. Medical records from Angelica Francu M.D., reveal that she treated Plaintiff from April 14, 2008 to August 19, 2011 for chronic back pain, lumbar radiculopathy, neck pain, pain in numbness in both hands, obesity, acute vertigo, palpitations, chest pain, numbness in the hands and feet, ventricular arrhythmias, anxiety, panic attacks and hyperlipedemia (R. 366-447, 531-43). . . . Dr. Francu completed a Physical Residual Functional Capacity Questionnaire on November 9, 2011, noting Plaintiff's diagnosis of ventricular arrhythmia, anxiety with panic attacks, and chronic back pain (R. 550). Dr. Francu opined that Plaintiff was limited to less than 2 hours of sitting and less than 2 hours of standing/walking during an eight hour workday, would need to be able to shift

4

positions at will with unscheduled breaks, was limited to using her hands, fingers, and arms 20% of an eight hour workday, and would likely be absent from work more than four days per month (R. 551-53).

Plaintiff suffers with chronic back pain. On July 19, 2010, Plaintiff sought emergency treatment for back and neck pain after a fall the prior week. It was noted that she first went to the doctor that day, but did not have insurance. (R. 286-87, 289, 294); *see also* (R. 419-20). . . . After eventually obtaining medical insurance, Plaintiff saw neurologist and pain management physician Ashraf Mohamed, M.D. on April 27, 2011, at Dr. Francu's referral, due to a history of lower back pain after a slip and fall incident in July 2010 (R. 495). Upon examination, Dr. Mohamed noted decreased strength of the left foot dorsiflexors and plantar flexors; pain and tenderness to palpitation of the lumbar facet, supraspinatus and infraspinatus areas on the left side; and limitation of range of motion of the supraspinatus and infraspinatus muscles. Ankle reflexes were also decreased bilaterally, and Plaintiff experienced back pain when trying to perform tip toe and heel walking. Dr. Mohammed diagnosed lumbar spondylosis, most prominent on the left; in addition to life (sic) sided lumbar radiculopathy, facet disease, and suprascapular neuropathy (R. 496). Vicodin was prescribed for pain with Flexeril for muscle spasm (R. 497). On March 17, 2011, Plaintiff saw Dr. Francu for chronic back pain, and was prescribed Flexeril and a referral to a weight loss clinic (R. 538). . . . On March 17, 2011, Plaintiff received nerve branch blocks of L2 through S1 due to lumbar spine pain and also a left suprascapular nerve block (R. 493-94).

On June 3, 2011, a second EMG/nerve conduction test of the lower extremities was performed. These tests showed abnormal findings in both lower extremities with electrodiagnostic evidence of chronic radiculopathy changes at L4 through S1, bilaterally (R. 492). . . . On June 28, 2011, Plaintiff was again examined by Dr. Francu for chronic back pain, and was noted to have decreased range of motion and a positive straight leg raise. She was instructed to continue to follow up with pain management, and was prescribed Motrin and Flexeril (R. 535-36).

. . . [On] April 14, 2008, Plaintiff saw Dr. Francu reporting numbness and tingling of her hands and feet, with bad circulation. On May 19, 2008 Plaintiff consulted an orthopedic surgeon, Jiab Suleiman, D.O. with complaints of numbness and tingling in the hands bilaterally. Upon examination, Dr. Suleiman noted positive Talen's and Phalen's signs in both wrists and diagnosed "[c]arpal tunnel, bilateral wrists by history and by EMG according to the patient." Dr. Suleiman noted that Plaintiff was "not improving with any conservative treatment, which included bracing. We will proceed with surgical intervention." (R. 441).

[Plaintiff is also morbidly obese.] On October 16, 2010, Plaintiff weighed 296 pounds with a height of 5 feet 7 inches (R. 259).

5

> In addition to her physical impairment, Plaintiff also suffers with mental health impairments. On March 14, 2011, Plaintiff underwent a psychological and psychiatric evaluation at Primacare. At that time, she was diagnosed with Adjustment Disorder with Anxiety and Depression (R. 520). Plaintiff continued to receive regular mental health treatment and counseling with her psychiatrist (R. 499-519). On August 19, 2011, Plaintiff saw Dr. Francu for anxiety and panic attacks, for which she was prescribed Lorazepam (Xanax) and referred back to the psychologist (R. 532). On August 22, 2011, Plaintiff's diagnosis was changed by the psychologist to Panic Disorder without agoraphobia and Generalized Anxiety Disorder (R. 505). Plaintiff continued to see the psychologist through at least September 14, 2011 for ongoing panic attacks (R. 499-502).

(Docket no. 15 at 6-8 (footnote omitted).) Although the above recitation of facts is included for purposes of context, the undersigned has independently reviewed Plaintiff's medical record and will make additional citations to the record as necessary throughout this Report and Recommendation.

### C. The Vocational Expert

After confirming that Plaintiff's past relevant work was medium per the DOT and heavy per Plaintiff's actual performance, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience with the following limitations:

> [Assume the person can] perform light work if given the option to just sit and stand at will during the work day. We wouldn't want this person climbing ropes, ladders, or scaffolds, and only occasionally doing the climbing of ramps or stairs. Only occasionally stooping, crouching, kneeling, crawling. For the hand this person can handle objections such as gross manipulation frequently, but not constantly during the work day. If a hypothetical individual is limited to simple, routine, repetitive tasks, and a low stress work environment which [] I'll define as having only infrequent decision making combined with few changes in the work setting (sic).

(TR 57-58.) The VE testified that such a person could not perform Plaintiff's past work but could perform work as an information clerk, a bin inspector, or a packer. (TR 58.)

The ALJ then asked the VE to consider a hypothetical person of Plaintiff's age, education, and work experience who was limited to sedentary work with "low cross manipulation . . . limited to frequent, not constant[,] and simple routine, repetitive work and a low stress environment as

defined [in his first hypothetical]." (TR 58-59.) The VE testified that this person could perform work as a reception clerk, a sedentary-level sorter, or a packer. (TR 59.)

The ALJ then asked the VE to consider a hypothetical person who needed to be off task up to three days a week for up to 20% of the day due to any number of impairments. (TR 59-60.) The VE testified that such a person would be precluded from any competitive employment. (TR 60.)

Finally, the ALJ asked the VE to assume that the individual in his second hypothetical question also required an at-will sit-stand option. (TR 60.) The VE testified that such an individual could still perform work as a reception clerk, a sorter, or a packer, but the number of jobs available for the reception clerk and sorter positions would be reduced. (TR 60.)

Plaintiff attorney then asked the VE to assume that the individual in the ALJ's first, second, and fourth hypothetical questions was also limited in that she could not perform any work that required "during the work day" production measurements such as hourly quotas. (TR 60-61.) The VE testified that such a limitation would not effect any of the numbers that she had given the ALJ. (TR 61.)

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2014; that she had not engaged in substantial gainful activity since October 23, 2010, Plaintiff's alleged onset date; and that she suffered from severe lumbar disc disease, carpal tunnel syndrome, ischemic heart disease, and anxiety disorder. (TR 25.) The ALJ further found that Plaintiff's impairments did not meet or equal those listed in the Listing of Impairments. (TR 26-27.) The ALJ then found that Plaintiff had the residual functional capacity to perform sedentary work with the following limitations: "the claimant can engage in frequent, but not constant gross manipulation. She is limited to simple, routine, repetitive tasks. The claimant requires work that

7

is low-stress, defined as only occasional decision making and only occasional changes in work setting." (TR 27.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 31.) The ALJ found that Plaintiff was not disabled under the Social Security Act at any time from October 23, 2010, through the date of the ALJ's decision. (TR 31-32.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir.

1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded under sentence four for the following reasons: (1) the ALJ failed to consider the effects of Plaintiff's obesity; (2) the ALJ failed to properly evaluate Plaintiff's credibility; (3) the ALJ erroneously found work at Step 5. (*See* docket no. 15 at 9.)

### 1. The ALJ's Failure to Consider Plaintiff's Obesity

Plaintiff asserts that the ALJ did not properly discuss or even consider the impact of Plaintiff's obesity in determining her RFC. (*Id.* at 16-18.) In support of this contention, Plaintiff relies on SSR 02-1p, which discusses obesity as a risk factor for work-based limitations. (*Id.* at 16-17.) SSR 02-1p classifies individuals with regard to obesity by considering Body Mass Index (BMI). Individuals with a BMI greater to or equal to 30 are considered "obese" with those above a BMI of 40 as having the most "extreme" type of obesity with the greatest risk for developing obesity-related impairments. SSR 02-1p. In evaluating the effects of obesity, SSR 02-1p "does not

mandate a particular mode of analysis," but it does "direct[] an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r*, 359 Fed. Appx. 574, 577 (6th Cir. 2009) (citation and internal quotation marks omitted).

As Plaintiff notes, on October 16, 2010, she weighed 296 pounds and stood 5 foot 7 inches tall, making her BMI 46.4, which indicates extreme morbid obesity. (*See* docket no. 15 at 18.) The ALJ did not discuss or even mention Plaintiff's weight at any step of his analysis or during Plaintiff's administrative hearing. Defendant acknowledges this deficiency but argues that "simply because a person weighs a certain amount or has a certain body mass index does not mean she has work-related limitations." (Docket no. 18 at 11.) More importantly, though, Defendant asserts that "the ALJ *indirectly* considered Plaintiff's obesity when he considered and gave some weight to [the opinions of doctors who] specifically noted Plaintiff's obesity." (*Id.* (emphasis added).)

In general, it is not enough for Defendant to suggest that the ALJ might have considered Plaintiff's obesity–the ALJ is required to actually do so. But "an ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity." *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 412 (6th Cir. 2006); *see also Coldiron v. Commissioner of Social Security*, 391 Fed.Appx. 435, 443 (6th Cir. 2010). Here, the ALJ relied on the expert opinions of Drs. Francu and Ngyuen, both of whom (Plaintiff argues) "specifically noted Plaintiff's obesity." (Docket no. 18 at 11.) Nevertheless, with regard to Dr. Francu's report, while she does include "obesity" as one of seven diagnoses, there is nothing in her report to suggest that she considered Plaintiff's obesity when opining on Plaintiff's functional limitation. (*See* TR 550-53.) And with regard to Dr. Ngyuen's report, while he does include obesity as a secondary impairment and he indicates that Plaintiff's obesity "limits [her] posture," the ALJ included no postural limitations in his RFC finding, and he did not explain why such limitations would be inappropriate. Therefore,

11

while the ALJ credited these opinions by giving them "some weight," it is not clear whether Dr. Francu considered Plaintiff's obesity, and it does not appear that the ALJ gave any weight whatsoever to the portion of Dr. Ngyuen's report that addressed Plaintiff's obesity. Therefore, the undersigned does not find that the ALJ credited the experts' reports to the extent that they actually "considered" Plaintiff's obesity.

Without any discussion of Plaintiff's obesity, and without reliance on the experts' reports regarding the same, the Court cannot conduct a meaningful review of the ALJ's decision. At most, the Court can speculate that the ALJ considered Plaintiff's obesity or that he intended his limitation of Plaintiff to sedentary work to account for her obesity. But such speculation does not equate to a finding of substantial evidence. Therefore, the Court should grant Plaintiff's motion and remand this matter for a proper discussion of Plaintiff's obesity.

### 2. Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all,

12

only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

To the extent that the ALJ finds that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff argues that the ALJ erred because "Plaintiff's medical records document her on-going[] struggle with the symptoms of her physical impairments." (Docket no. 15 at 11.) But contrary to Plaintiff's contention, the ALJ did not find that there was no medical evidence to support Plaintiff's alleged symptoms; he merely found that the medical evidence did not support her statements regarding the *severity* of her symptoms. (TR 28.) Specifically, the ALJ acknowledged that some of the medical evidence supported Plaintiff's statements, but he noted the following:

- at a December 2010 office visit, Plaintiff stated that she was "doing quite well" and "denied any feelings of palpitations or arrhythmia; and she noted that she was "considering cancelling her scheduled January 2011 ablation procedure," which she ultimately did (TR 28);

13

• in February 2011, Plaintiff again noted that she was "doing quite well" and that she was tolerating her medication (TR 28);

• Plaintiff's medical record includes "no record of physical therapy, suggestions of surgery, or additional injections" regarding Plaintiff's back pain (TR 29);

• Plaintiff's carpal tunnel syndrome was diagnosed in May of 2008, but "[t]his office visit is the only record of [the condition]," and "[t]he record does not contain any medical evidence of wrist pain after the claimant's alleged onset date" (TR 29); and

• with regard to her anxiety, in June 2011, Plaintiff stated that she was "feeling better about life, more confident and positive," and she acknowledged that "she had been treating with Atavan since August 2011, and that it is helping her." (TR 29).

An ALJ "may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree so long as the ALJ properly sets forth the basis for determining Plaintiff's credibility. SSR 96–7p. Here, the ALJ found that Plaintiff's statements were not credible concerning the severity of her symptoms, and the Court can find no fault in the ALJ's analysis because he makes clear to Plaintiff and the Court the weight he gave to Plaintiff's statements and the reasons for that weight.

### 3. The ALJ's Step-5 Determination

Plaintiff asserts that the ALJ's RFC determination was improper because it did not "properly include Plaintiff's bilateral hand limitations, chronic pain symptoms, and limited mobility." (Docket no. 15 at 14.) In support of this position, Plaintiff cites to medical records documenting all of her alleged complaints. (*Id*. at 14-15.) But an examination of the ALJ's decision reveals that he considered all of the evidence to which Plaintiff cites. (*See* TR 28-29.) Moreover, there is no mandate that the ALJ discuss all of the evidence of record. To the contrary, "[a]n ALJ can consider

14

all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). Here, the ALJ found that the evidence only supported the mobility and manipulation restrictions that he included in Plaintiff's RFC. And while the medical record supports Plaintiff's argument, substantial evidence also supports the ALJ's findings. Therefore, because this determination falls within the ALJ's "zone of choice," the Court should deny Plaintiff's motion in this regard.

## VI.  CONCLUSION

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 15) be GRANTED IN PART AND DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 18) be DENIED. This matter should be remanded pursuant to 42 U.S.C. § 405(g) for further consideration of Plaintiff's obesity.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to

Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

     Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 30, 2014        s/ Mona K. Majzoub  
                                      MONA K. MAJZOUB  
                                      UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

     I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 30, 2014        s/ Lisa C. Bartlett  
                                      Case Manager